**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| GARY KESLER, ) | |
| ) | |
| REBECCA SUE KESLER ) | |
| ) | |
| ERIC KESLER ) | Case No. 1:23CV00164 |
| ) | |
| CHAD KESLER ) | (Removed from Circuit Court of Stoddard |
| ) | County, MO, Case No. 23SD-CC00071) |
| DONNA SUE TAYLOR, AS TRUSTEE OF ) | |
| THE GARY LEE & REBECCA SUE ) | |
| KESLER REVOCABLE LIVING TRUST ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TYSON FOODS, INC., ) | |
| TYSON CHICKEN, INC. ) | |
| TYSON SALES & ) | |
| DISTRIBUTION, INC. ) | |
| ) | |
| MARK AVERY ) | |
| ) | |
| KRISTI SANDERS ) | |
| Defendants. ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Defendants Tyson Foods, Inc., Tyson Chicken, Inc., and Tyson Sales & Distribution, Inc. (together the "Tyson Defendants") and Mark Avery and Kristi Sanders (together the "individual Defendants") oppose Plaintiffs' motion to remand and state the following in opposition.

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 1

    I.      Plaintiffs Fraudulently Joined the Individual Defendants. .................................... 1

          A.     Plaintiffs' Counts for Fraudulent and Negligent Misrepresentation Fail as a Matter of Law and are Insufficiently Pled. ................................................ 2

               1.     The Economic Loss Rule Bars Plaintiffs' Fraud Claims. ............... 2

               2.     Plaintiffs Fail to Plead a Claim for Fraud with Particularity. ......... 6

               3.     Plaintiffs' Alleged Representations and Omissions Cannot Support a Claim for Fraudulent or Negligent Misrepresentation. .............. 11

          B.     Plaintiffs' Petition Cannot Satisfy the Elements of an Unjust Enrichment Claim.................................................................................................. 13

          C.     Respondeat Superior is Not a Cause of Action........................................ 16

          D.     Plaintiffs Civil Conspiracy Count Fails Because There is No Such Claim Among Employees and Their Employer.................................................... 16

    II.     The Packers and Stockyards Act Contains a Controlling Forum Selection Clause. ................................................................................................................ 17

    III.    Defendants Have Filed Their Required Disclosures............................................ 21

CONCLUSION .................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. C.L. Union/E. Missouri Fund v. Miller*,
    803 S.W.2d 592 (Mo. banc 1991)......................................................................................21

*Archway Kitchen & Bath, Inc. v. Lands Dev. Corp.*,
    838 S.W.2d 13 (Mo. App. E.D. 1992) ...........................................................................21

*Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.*,
    No. 4:10CV623SNLJ, 2011 WL 4501049 (E.D. Mo. Sept. 28, 2011) .....................17

*Asamoah-Boadu v. State*,
    328 S.W.3d 790 (Mo. App. W.D. 2010) ......................................................................12

*Ballard v. City of Creve Coeur*,
    419 S.W.3d 109 (Mo. App. E.D. 2013) ......................................................................20

*Batek v. Curators of Univ. of Missouri*,
    920 S.W.2d 895 (Mo. banc 1996)................................................................................13

*Bayside Enterprises, Inc. v. N.L.R.B.*,
    429 U.S. 298 (1977).....................................................................................................26

*Beeler v. Martin*,
    306 S.W.3d 108 (Mo. App. W.D. 2010).....................................................................20

*Bismarck Park Ave. Properties, L.L.P. v. Owners Ins. Co.*,
    No. 1:21-CV-165, 2023 WL 5587558 (D.N.D. Aug. 29, 2023)................................28

*Breaking Free, LLC v. JCG Foods of Alabama, LLC*,
    No. 4:18-CV-01659-ACA, 2019 WL 1513978 (N.D. Ala. Apr. 8, 2019)................27

*Compass Bank v. Eager Road Associates, LLC*,
    922 F.Supp.2d 818 (E.D. Mo.2013)......................................................................11, 12

*Coverdell v. Countrywide Home Loans, Inc.*,
    375 S.W.3d 874 (Mo. App. S.D. 2012) ......................................................................18

*Creative Walking, Inc. v. Am. States Ins. Co.*,
    25 S.W.3d 682 (Mo. App. E.D. 2000) ...................................................................22, 23

*Cromeans v. Morgan Keegan & Co.*,
    No. 2:12-CV-04269-NKL, 2013 WL 12129609 (W.D. Mo. Nov. 5, 2013)...........21

*Crown Foods, Inc. v. Mercedes-Benz USA, LLC*,
No. 4:22-CV-663 SRW, 2022 WL 17338083 (E.D. Mo. Nov. 30, 2022) ...............................9

*Davis v. Eisai, Inc.*,
No. 4:20-00762-CV-DGK, 2021 WL 4810702 (W.D. Mo. Oct. 14, 2021) ..........................13

*Dibrill v. Normandy Assocs., Inc.*,
383 S.W.3d 77 (Mo. App. E.D. 2012) ...................................................................................22

*Garland v. Nationstar Mortg. LLC*,
No. 4:19-CV-01765-SPM, 2020 WL 1952599 (E.D. Mo. Apr. 23, 2020) ...........................16

*Hill v. Bank of Am., N.A.*,
No. 4:16CV00444-ERW, 2016 WL 6441599 (E.D. Mo. Nov. 1, 2016) ...............................16

*Holly Farms Corp. v. N.L.R.B.*,
517 U.S. 392 (1996)..............................................................................................................27

*Jackson v. Swift Eckrich, Inc.*,
53 F.3d 1452 (8th Cir. 1995) ................................................................................................24

*Johnson Grp., Inc. v. Grasso Bros.*,
939 S.W.2d 28 (Mo. App. E.D. 1997) ..................................................................................19

*Knudson v. Sys. Painters, Inc.*,
634 F.3d 968 (8th Cir. 2011) ................................................................................................13

*Mach. Maint. & Equip. Co. v. Cooper Indus., Inc.*,
634 F. Supp. 367 (E.D. Mo. 1986).......................................................................................12

*Menz v. New Holland North Amer., Inc.*,
440 F.3d 1002 (8th Cir. 2006) ................................................................................................7

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*,
578 U.S. 374 (2016)..............................................................................................................24

*Myron Bowling Auctioneers, Inc. Worldwide Recycling Equip. Sales, LLC v. Bowling*,
No. 2:15CV00066HEA, 2016 WL 4446741 (E.D. Mo. Aug. 24, 2016) ..........................17, 18

*O'Neal v. Stifel, Nicolaus & Co., Inc.*,
996 S.W.2d 700 (Mo. App. E.D. 1999) ..................................................................................9

*OS33 v. CenturyLink Commc'ns, L.L.C.*,
350 F. Supp. 3d 807 (E.D. Mo. 2018)..............................................................................10, 11

*OS33 v. CenturyLink Commc'ns, L.L.C.*,
No. 4:17-CV-2603 CAS, 2018 WL 2267910 (E.D. Mo. May 17, 2018) ...................10, 11, 12

*Owen Cont'l Dev., LLC v. Vill. Green Mgmt. Co.*,
No. 4:11CV1195 FRB, 2011 WL 5330412 (E.D. Mo. Nov. 4, 2011)....................................15

*Pace v. Wells Fargo Bank, N.A.*,
No. 4:11-CV-489 CAS, 2012 WL 3705088 (E.D. Mo. Aug. 27, 2012)..................................19

*In re Pilgrim's Pride Corp.*,
No. 08-45664 DML, 2011 WL 1107118 (Bankr. N.D. Tex. Mar. 24, 2011) .........................27

*Post Hill Homeowners Assn. v. Kennell*,
39 S.W.3d 508 (Mo. App. W.D. 2000)................................................................................20

*Rhodes Eng'g Co. v. Pub. Water Supply Dist. No. 1 of Holt Cnty.*,
128 S.W.3d 550 (Mo. App. W.D. 2004)...............................................................................18

*Simpson v. Thomure*,
484 F.3d 1081 (8th Cir. 2007) ...........................................................................................7

*Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*,
781 F.3d 1003 (8th Cir. 2015) ..........................................................................................15

*Summerhill v. Terminix, Inc.*,
637 F.3d 877 (8th Cir. 2011) .......................................................................................13, 16

*Trademark Med., LLC v. Birchwood Lab'ys, Inc.*,
22 F. Supp. 3d 998 (E.D. Mo. 2014)..................................................................................11

*United States v. Tyson's Poultry, Inc.*,
216 F. Supp. 53 (W.D. Ark. 1963).....................................................................................25

*Vaith v. Gen. Motors, LLC*,
No. 18-CV-031 (JRT/HB), 2018 WL 3489600 (D. Minn. June 28, 2018).............................13

*Volentine v. Raeford Farms of Louisiana, LLC*,
No. CIV.A.09-CV-1865, 2010 WL 743557 (W.D. La. Feb. 24, 2010)..................................24

*Wilkinson v. Shackelford*,
478 F.3d 957 (2007).........................................................................................................8

*Wivell v. Wells Fargo Bank, N.A.*,
773 F.3d 887 (8th Cir. 2014) ...........................................................................................19

**Statutes**

7 U.S.C.A. § 182...............................................................................................23, 24, 25

15 U.S.C § 78aa..............................................................................................................24

28 U.S.C. § 1331.............................................................................................................23

28 U.S.C. §§ 1332(a) and 1441(a)-(b) ...................................................................7

28 U.S.C. § 1446(b) ....................................................................................27

Packers and Stockyards Act (7 U.S.C. §§ 181 et seq.) .....................................17, 23, 27

**Other Authorities**

Fed. R. Civ. P. 10(c) .....................................................................................21

Rule 7.1(a)(2)(A) ........................................................................................28

Rule 9(b) ......................................................................................... *passim*

## INTRODUCTION

There are two, independent reasons this Court has jurisdiction over Plaintiffs' claims. First, the Court has diversity jurisdiction because Plaintiffs fraudulently joined the individual Defendants to destroy diversity. Second, the Packers and Stockyards Act ("PSA") contains a controlling forum clause that places this case in the Eastern District of Missouri under federal question jurisdiction. Either reason is sufficient to deny Plaintiff's motion for remand.

## ARGUMENT

### I.      Plaintiffs Fraudulently Joined the Individual Defendants.

The Court has diversity jurisdiction where the amount in controversy exceeds the sum of $75,000 and the dispute is between citizens of different states. 28 U.S.C. §§ 1332(a) and 1441(a)-(b). Plaintiffs do not contest the amount in controversy exceeds $75,000. It is not disputed that the Tyson Defendants are citizens of Delaware and Arkansas and Plaintiffs are otherwise diverse. Doc. 6 ("Petition" or "Pet."), ¶¶ 16-18. Plaintiffs only contest diversity on the basis that Mr. Avery and Ms. Sanders are citizens of Missouri. However, where Plaintiffs fraudulently join individual defendants in an attempt to defeat diversity, the citizenship of those fraudulently joined individual defendants is ignored. *Simpson v. Thomure*, 484 F.3d 1081, 1083 (8th Cir. 2007).

A plaintiff fraudulently joins a defendant when, as here, "there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Menz v. New Holland North Amer., Inc.*, 440 F.3d 1002, 1004 (8th Cir. 2006) (quoting *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)). In analyzing fraudulent joinder, the court focuses not on the artfulness of the pleadings, but on "whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (2007) (quoting *Filla v. Norfolk S. Ry.,* 336 F.3d 806, 811 (8th Cir.2003)).

1

This is a dispute between the family of a deceased Tyson poultry grower and three Tyson entities about the family's alleged expectation of future contracts with Tyson. As corporations, the Tyson entities can only act through their employees and agents. But there is no allegation here about anything that an individual defendant did in his or her individual capacity. Rather, the allegations focus exclusively on conduct within the alleged course and scope of the individual Defendants' employment with Tyson. Plaintiffs assert five counts against the individual Defendants: (1) Count I – Fraudulent Misrepresentation, (2) Count IV – Unjust Enrichment, (3) Count V – Negligent Misrepresentation, (4) Count VI – Respondeat Superior, and (5) Count VII – Civil Conspiracy. None of these counts alleges a reasonable basis in fact or law to support a claim against the individual Defendants in their individual capacity.

### A. Plaintiffs' Counts for Fraudulent and Negligent Misrepresentation Fail as a Matter of Law and are Insufficiently Pled.

There are three reasons why Plaintiffs' misrepresentation claims under Counts I and V against the individual Defendants fail. First, the economic loss doctrine bars these claims because the Plaintiffs' alleged omissions/representations are all dependent on the contract between Gary Kesler and Tyson Chicken, Inc. Second, Plaintiffs fail to meet particularity standards because they do not plead the who, what, where, when, and how as required by Rule 9(b). Third, the alleged representations and omissions cannot support a claim for fraudulent or negligent misrepresentation because they are not statements of fact, but predictions of the future with no reliance.

### 1. The Economic Loss Rule Bars Plaintiffs' Fraud Claims.

The economic loss doctrine bars Plaintiffs' claims of fraudulent and negligent misrepresentation. When a plaintiff seeks purely monetary damages for a claim that arises out of and is dependent on a contract, then the plaintiff's recovery is limited to the contract. *Crown Foods, Inc. v. Mercedes-Benz USA, LLC*, No. 4:22-CV-663 SRW, 2022 WL 17338083, at *6 (E.D. Mo.

Nov. 30, 2022); *O'Neal v. Stifel, Nicolaus & Co., Inc.*, 996 S.W.2d 700, 702 (Mo. App. E.D. 1999). Here, Plaintiffs' claims are subsumed entirely by the alleged contractual relationship between Mr. Kesler and Tyson Chicken, Inc. under which Mr. Kesler raised broiler chickens for Tyson. Plaintiffs allege that "the Tyson Companies would [] move [] hatched chickens at a specified age to broiler farms (owned by individuals or entities that were wholly separate from the Tyson Companies) who were contracted with the Tyson Companies to grow those chickens to slaughter age[.]" Pet., ¶ 1. Plaintiffs plead that they operated two such "broiler farms," which they call the Kesler family chicken farms. *Id.* at ¶ 13, 22-23. Plaintiffs also plead that they formalized this business relationship by contract, most recently on December 4, 2018. *Id.* at ¶ 26, 30.

Plaintiffs' causes of action all emanate from Gary Kesler's contractual relationship with Tyson Chicken. They claim that "[r]epresentations made by the Tyson Companies, Avery, & Sanders . . . induced the Kesler family to believe that so long as they continued to spend money, time, effort and opportunity costs to meet the demands of the Tyson Companies would continue (sic) to use the Kesler family chicken farms to grow their broiler chickens for many years to come beyond their short term agreements." *Id.* at ¶ 30. And in Paragraph 34, Plaintiffs allege "the Tyson Companies, Avery and Sanders routinely made representations to growers that their short term agreements for continued operations would be continue (sic) for years to come if their houses remained in compliance[.]" *Id.* at ¶ 34.

Plaintiffs rely on these alleged representations and omissions to support their misrepresentation claims against Mr. Avery and Ms. Sanders. Plaintiffs allege that "Mark Avery and Kristi Sanders made these material misrepresentations set forth herein to the Kesler family either knowing they were false or recklessly and/or without taking appropriate steps to ensure that

the company would carry through on its commitments." *Id.* at ¶ 44; *see also Id.* at ¶ 78 (making similar allegations under Count V for Negligent Misrepresentation).

Plaintiffs' claims all emanate from the existence of a contract. "Numerous subsequent cases in this district have held that fraud claims are barred by the economic loss doctrine under Missouri law, unless they are independent of the contract." *OS33 v. CenturyLink Commc'ns, L.L.C.*, 350 F. Supp. 3d 807, 816 (E.D. Mo. 2018). Courts look at two factors in examining whether a fraud claim is independent of a contract claim to avoid the economic loss doctrine: "(1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract, and (2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud." *Id.*

In *OS33*, the Eastern District of Missouri dismissed a plaintiff's fraud claim because it was not independent of the parties' contract. There, OS33 and CenturyLink executed a contract for cloud computing, hosting and related services. *Id.* at 810. During performance of the contract, OS33 sent CenturyLink a letter, asking to terminate the contract early. *See OS33 v. CenturyLink Commc'ns, L.L.C.*, No. 4:17-CV-2603 CAS, 2018 WL 2267910, at *1–3 (E.D. Mo. May 17, 2018). CenturyLink responded that early termination would result in a penalty. *Id.* OS33 then tried to rescind its termination, but it was too late. *Id.* CenturyLink terminated the contract early. *Id.* OS33 brought a suit against CenturyLink for breach of contract and fraud, alleging that CenturyLink had fraudulently altered the duration of the contract and that CenturyLink breached the contract early by refusing to honor OS33's rescission. *Id.*

The court held that OS33's fraud claim "[arose] directly out of contractual duties and expectations and d[id] not seek damages outside of the Agreement." *Id.* at 817. As to the first factor, the court noted that OS33's fraud allegations were the exact same as its breach of contract

4

allegations—namely, that CenturyLink altered contract terms and inappropriately terminated the contract early. And as to the second factor, the court noted that OS33 was only seeking damages coextensive with the alleged breach of the contract. *Id*.

This Court reached a similar result in *Compass Bank v. Eager Road Associates, LLC*, 922 F.Supp.2d 818, 827–28 (E.D. Mo.2013), where the defendant promised it would be able to pay out a settlement figure—inducing the plaintiff to sign a settlement contract—but then revealed it did not have the funds to make this payment. And in *Trademark Med., LLC v. Birchwood Lab'ys, Inc.*, 22 F. Supp. 3d 998, 1003 (E.D. Mo. 2014), this Court dismissed a fraud claim based on the economic loss doctrine where the defendant had made representations to the plaintiff that its oral care kits were safe, but then later recalled them. In all these cases, the plaintiffs' allegations of fraud were dependent on the existence of a contract and, therefore, precluded by the economic loss doctrine.

This case is no different. Plaintiffs' claims are, in essence, that they had a contract and believed they would have one for a long time. Plaintiffs' fraud claim—that the individual Defendants made certain omissions/representations about Tyson's future at the Dexter Complex—emanate from a contract that includes terms that govern that very issue. The contracts that Gary Kesler signed with Tyson Chicken, Inc. have sections governing "**Termination**" and "**Duration**." Doc. 38, at 8 And Plaintiffs allege the representations at issue are "promises of continued income beyond the term of any existing contract[.]" Doc. 30 at 6. In *OS33*, the court barred plaintiff's fraud claim because the alleged fraud—that defendant was altering the duration of the contract—was incorporated into the contract. *OS33*, 2018 WL 2267910, at *3. And in *Compass Bank*, the court barred plaintiff's misrepresentation claim because the defendant's promise to fulfill future contract terms was incorporated into that agreement. *Compass Bank*, 922 F.Supp.2d at 827–28.

Here, the first factor of the contract independence analysis—"whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract"—precludes the claims under the economic loss doctrine.

This conclusion is bolstered by the damages that Plaintiffs seek, which is the second factor of the contract independence analysis. Plaintiffs allege they were damaged by continuing to operate the Kesler family farms as usual, when they would have stopped investing in the farms, had they known of the Dexter Complex's imminent closing. These type of reliance damages are classic breach of contract damages. *See*, *e.g.*, *Asamoah-Boadu v. State*, 328 S.W.3d 790, 797 (Mo. App. W.D. 2010) ("certain reliance damages, such as costs incurred or losses sustained in expectation of the relationship continuing for at least the notice period, may flow from breach of a notice agreement"); *Mach. Maint. & Equip. Co. v. Cooper Indus., Inc.*, 634 F. Supp. 367, 371 (E.D. Mo. 1986). Plaintiffs' alleged damages therefore stem from their contract and are purely contractual damages.

In sum, Plaintiffs' fraud claims are not independent of the contracts at issue and are barred by the economic loss rule.

### 2.     Plaintiffs Fail to Plead a Claim for Fraud with Particularity.

Federal Rule of Civil Procedure 9(b) sets a heightened pleading standard for fraud actions requiring that a party must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b); *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).[1]

A plaintiff's failure to plead fraud with particularity is sufficient grounds to find fraudulent joinder. *See Vaith v. Gen. Motors, LLC*, No. 18-CV-031 (JRT/HB), 2018 WL 3489600, at *7 (D. Minn. June 28, 2018), *report and recommendation adopted*, No. CV 18-31(JRT/HB), 2018 WL

---

[1]     Missouri's rule on pleading fraud claims mirrors FRCP 9(b). *See Batek v. Curators of Univ. of Missouri*, 920 S.W.2d 895, 900 (Mo. banc 1996).

3475488 (D. Minn. July 19, 2018) (finding the plaintiff failed to show "an arguably reasonable basis for predicting that the state law might impose liability" because he failed to adequately plead a claim for misrepresentation under Rule 9(b)). Here, Plaintiffs do not plead any facts to support their fraud claims and, therefore, have no reasonable basis for imposing liability against Mr. Avery and Ms. Sanders.[2]

Rule 9(b) requires plaintiffs to plead the "who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill*, 637 F.3d at 880 (quotations omitted). Here, Plaintiffs fail to meet any of these standards.[3] They do not say who made allegedly false statements, when these statements were made, or to whom they were made.

Instead, Plaintiffs lump the individual Defendants in with the Tyson Defendants through generic pleading, alleging a series of generic representations:

> [T]he Tyson Companies, Mark Avery and Kristi Sanders made the following representations to other growers all the way up until the day of the August 7, 2023 announcement:
>
> a.    issuing letters of intent to other growers in the Dexter Complex promising contracts for construction or improvements of broiler houses within weeks of the August 7, 2023 announcement,
>
> b.    issued letters of intent to unwitting prospective purchasers assuring them and their respective financial institutions that if they invested missions of dollars

---

[2]    Plaintiffs' motion to remand states "[t]he heightened pleading standard of FRCP 9(b) is not a basis to establish fraudulent joinder." Doc. 30 at 7. That is wrong. In support, Plaintiffs cite to *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 979 (8th Cir. 2011). *Knudson* did <u>not</u> address whether a plaintiff fails to provide a reasonable basis for liability when he or she fails to state a claim for fraud. The court reached that exact issue in *Vaith*, where it found that a plaintiff's failure to properly plead fraud can be a basis to establish fraudulent joinder. 2018 WL 3489600, at *7.

[3]    The heightened pleading standard of Rule 9(b) is applicable to both the fraudulent and negligent misrepresentation claims because they rely on the same representations and are founded in an allegation of fraud. *See Davis v. Eisai, Inc.*, No. 4:20-00762-CV-DGK, 2021 WL 4810702, at *2 (W.D. Mo. Oct. 14, 2021) ("Thus, the Court concludes Plaintiff's negligent misrepresentation claim is grounded in allegations of fraud and is subject to Rule 9(b)'s heightened pleading standards.").

    to purchase a broiler house facility that the Tyson Companies would pay them for raising their chickens for years to come,

  c.  publicly held out incentives for farmers to build new multi-million dollar broiler houses, promising to pay large sums of money (upfront and continuing annual payments thereafter) for each square foot of new construction that was completed

  d.  demanded of broiler farmers to retrofit their broiler houses and make extremely costly modifications in order to continue receiving chickens from the Tyson Companies.

Pet., ¶ 40.

  There are numerous reasons why these allegations fail to meet the standards of Rule 9(b) but the most glaring is that Plaintiffs do not even allege these representations were made to them. Plaintiffs claim the Defendants made these alleged representations to "other growers," "prospective purchasers," and "broiler farmers." *Id.* Nowhere do Plaintiffs claim that Defendants "issued letters" to them. It is especially important in this context for Plaintiffs to allege to whom these representations were made because there are five different Plaintiffs: (1) Gary Kesler, (2) Rebecca Sue Kesler, (3) Eric Kesler, (4) Chad Kesler, and (5) Donna Sue Taylor, as trustee of The Gary Lee and Rebecca Sue Kesler Revocable Living Trust. And these five Plaintiffs are not similarly situated for purposes of this case. Gary Kesler is the only Plaintiff to have executed a contract with Tyson Chicken, Inc. Pet., ¶ 26. And Mr. Kesler passed away, which is why his contract was terminated. *See* Pet., Ex. A (letter terminating Mr. Kesler's contract in light of his death). The other individual Plaintiffs are alleged to have "operated" the Kesler family farms, but there is no allegation of a contract with respect to these Plaintiffs. *Id.* at ¶ 22. It is quite material for Plaintiffs to plead which—if any—Plaintiff was the subject of these alleged misrepresentations. Plaintiffs' Petition lacks any plausible allegation that any individual Defendant made any representation to any Plaintiff, let alone specifying the Plaintiff to whom each alleged representations was made.

Further, Plaintiffs do not allege with any specificity who made each alleged representation. Rule 9(b) is designed to preclude Plaintiffs from generalizing statements among a group of defendants, and instead requires that the statements be attributed with specificity such that whoever is alleged to have made the statements knows exactly what he is being accused of saying. *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *Owen Cont'l Dev., LLC v. Vill. Green Mgmt. Co.*, No. 4:11CV1195 FRB, 2011 WL 5330412, at *5 (E.D. Mo. Nov. 4, 2011). Plaintiffs have utterly failed to meet this core Rule 9(b) requirement.

Plaintiffs also offer no timeframe for these alleged representations, other than to say they came before the announcement that the Dexter Complex was closing. Pet., ¶ 40. The timing of the alleged statement is an important element of particularity. In this case, for example, it is undisputed that one of the individual Defendants, Mr. Avery, was not even employed by any Tyson company from July 2021 to March 2023. Yet Plaintiffs allege they have done business with the Tyson Defendants from 1998 to the present, which makes the possible timeframe more than 20 years. Pet. ¶ 30. Courts in this District have dismissed fraud claims that only alleged the <u>month</u> in which the representation was made. *Garland v. Nationstar Mortg. LLC*, No. 4:19-CV-01765-SPM, 2020 WL 1952599, at *6 (E.D. Mo. Apr. 23, 2020) (dismissing fraud claim where the alleged representation was made sometime between January 11, 2019 and February 1, 2019); *see also Hill v. Bank of Am., N.A.*, No. 4:16CV00444-ERW, 2016 WL 6441599, at *4 (E.D. Mo. Nov. 1, 2016) ("Even if the Court construes this misrepresentation as happening 'in December and January 2010,' pleading a single instance of misrepresentation occurred during a two month time period does not satisfy the particularity requirement of FRCP 9(b)'s 'when' element.").

Paragraph 34 is the only other place in the Petition where the Plaintiffs offer any shred of detail about the individual Defendants' alleged misrepresentations. Again grouping all Defendants together, Plaintiffs allege "[t]hat prior to August 7, 2023, the Tyson Companies, Avery and Sanders routinely made representations to growers that their short term agreements for continued operations would be continue (sic) for years to come if their houses remained in compliance with the demands of the Tyson Companies." Pet., ¶ 34. Plaintiffs do not allege the individual Defendants made representations to them. Plaintiffs do not state which Defendant made the representations or when these representations were supposedly made. And Plaintiffs do not allege that this generalized statement—that Tyson could continue to do business with growers "for years to come" if they had compliant houses—was false at the time stated, which could have been any of the 20 years in which Mr. Kesler had contracts with Tyson Chicken, Inc. The alleged misrepresentation thus does not include the requisite "who, what, when, where, and how" to state a plausible claim for fraud. *Summerhill*, 637 F.3d at 880.

Plaintiffs try to avoid these failures in their motion to remand by arguing that they allege omissions, not just misrepresentations. *See* Doc. 30, 8-10.[4] Plaintiffs' characterization of their claim does not negate the words of the pleading itself, nor, the particularity standards. All claims for fraud—either by representation or omission—must be pled with particularity. *Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.*, No. 4:10CV623SNLJ, 2011 WL 4501049, at *8 (E.D. Mo. Sept. 28, 2011). That did not occur here. For example, Plaintiffs' Petition does not state when

---

[4]     Plaintiffs argue they may plead "knowledge" generally. Doc. 30, 8-10. Plaintiffs then include a few pages of allegations which are not contained in their Petition, suggesting the individual Defendants had knowledge of the Dexter plant's closing. *Id.* It is the allegations in the Petition that matter. Plaintiffs alleged fraud, namely that the individual Defendants made fraudulent misrepresentations or omissions about continued business at the Dexter plant. It is those allegations that must be pled with particularity under Rule 9(b), not allegations of "knowledge." As shown, Plaintiffs failed to meet that particularity standard in their pleadings.

the individual Defendants knew the Dexter Plant would close, the conversations in which the individual Defendants supposedly kept this information secret, or the Plaintiffs to whom the individual Defendants had a duty to divulge this information. Plaintiffs' allegations are vague and fail to present a reasonable basis on which a court could impose liability. *Id.*

### 3. Plaintiffs' Alleged Representations and Omissions Cannot Support a Claim for Fraudulent or Negligent Misrepresentation.

Regardless of the particularity standard, Plaintiffs' misrepresentation claims do not state a claim because they cannot provide a basis for liability for two reasons. First, the allegations are nothing more than predictions regarding third parties, which are not actionable representations. Second, Plaintiffs could not have reasonable relied on these representations because they directly contradict the terms of the existing contract.

### a. The Alleged Representations are "Predictions."

As a matter of black-letter law, "[a] plaintiff cannot predicate a fraud action on a statement regarding what independent third parties will do in the future." *Myron Bowling Auctioneers, Inc. Worldwide Recycling Equip. Sales, LLC v. Bowling*, No. 2:15CV00066HEA, 2016 WL 4446741, at *2 (E.D. Mo. Aug. 24, 2016). "Because a statement about the future actions of third parties is really a prediction rather than a promise, this rule is just a corollary of another Missouri rule that predictions for the future are not actionable as fraudulent misrepresentations." *Id.*

Here, Plaintiffs' claims against Mr. Avery and Ms. Sanders are that they represented that *Tyson* would continue to renew its contracts for years to come. Pet., ¶ 34. That's clearly a prediction into the future about a third-party's actions and cannot support a claim for fraudulent or negligent misrepresentation. *Rhodes Eng'g Co. v. Pub. Water Supply Dist. No. 1 of Holt Cnty.*, 128 S.W.3d 550, 568 (Mo. App. W.D. 2004) (defendant's representation that a future business entity—to be created by defendant—would enter into a contract with plaintiff was a prediction that

11

could not support a misrepresentation claim); *Myron Bowling Auctioneers*, 2016 WL 4446741, at *2.

> **b.** **Plaintiffs Could Not Reasonably Rely on Representations that Contradict the Contract.**

A necessary element of both fraudulent and negligent misrepresentation is that the hearer justifiably or reasonably relied on the speaker's representation. *Coverdell v. Countrywide Home Loans, Inc.*, 375 S.W.3d 874, 885 (Mo. App. S.D. 2012). Plaintiffs allege they relied on the individual Defendants' representations that the Tyson Defendants would continue doing business with the Kesler farm for years to come—beyond the life of the contracts. *See* Doc. 30, 6 (discussing "income beyond the term of any existing contract" and Tyson's discussion of a new contract with the Kesler farms).

Yet the contract executed by Mr. Kesler and Tyson Chicken, Inc. contains a "**Termination**" clause that controls when the parties may terminate the contract. Doc. 38, at 8. It contains a "**Duration**" clause that provides the contract will conclude in December 2023. *Id.* And it contains an "**Entire Agreement**" provision that states the "**Producer [(i.e. Mr. Kesler)] understands and agrees that no agent, servant, or employee of [Tyson Chicken, Inc.] has authority to make any oral modification to this Contract.**" *Id.* (emphasis in original). As these provisions make clear, there was no promise to continue working with the Kesler farms after the life of the contract. And the contract expressly disavowed Mr. Avery's or Ms. Sanders's ability to change that. With these clear provisions in place, it is patently unreasonable for the Plaintiffs to rely on any representations by the individual Defendants as to Tyson Chicken, Inc.'s future dealings beyond the contract.

Missouri courts have held a plaintiff cannot reasonably rely on representations that contradict the express terms of a contract—especially when the contract contains a no-oral

modifications clause. *See Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 898 (8th Cir. 2014) (applying Missouri law and holding plaintiff's "reliance on [defendant's] alleged oral representations was unreasonable in light of the deed of trust's no-oral-modifications clause"); *Pace v. Wells Fargo Bank, N.A.*, No. 4:11-CV-489 CAS, 2012 WL 3705088, at *11 (E.D. Mo. Aug. 27, 2012) (holding plaintiff's reliance was not reasonable where "the Deed of Trust expressly requires all modifications of the Note and Deed of Trust to be in writing"). Plaintiffs cannot rely on statements contradicted by the contract and thus, their claims as pled do not state a claim.

## B. Plaintiffs' Petition Cannot Satisfy the Elements of an Unjust Enrichment Claim.

Plaintiffs do not provide a reasonable basis for the court to impose liability based on unjust enrichment because they fail to plead the most basic element—that Plaintiffs conferred a benefit on the individual Defendants at their own expense. Plaintiffs' only allegation is that they relied on Tyson's representations to their detriment; there is no allegation that Mr. Avery or Ms. Sanders unjustly retained a benefit Plaintiffs conferred. Plaintiffs never allege that Mr. Avery or Ms. Sanders "receive[d] something for nothing" from them. *Johnson Grp., Inc. v. Grasso Bros.*, 939 S.W.2d 28, 30 (Mo. App. E.D. 1997).

"Unjust enrichment occurs when the plaintiff confers a benefit on the defendant under circumstances in which retention of that benefit without paying its reasonable value would be inequitable or unjust." *Ballard v. City of Creve Coeur*, 419 S.W.3d 109, 122–23 (Mo. App. E.D. 2013). To state a claim for unjust enrichment, Plaintiffs must plead: "(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; [and] (3) that it would be unjust to allow the defendant to retain the benefit." *Beeler v. Martin*, 306 S.W.3d 108, 112 (Mo. App. W.D. 2010).

Here, Plaintiffs allege the individual Defendants received the following benefits:

- Continued and regained employment with the Tyson Companies;
- Monetary gain [(his salary)];
- Employment promotion with the Tyson Companies;
- Additions to retirement benefits; and
- Other benefits which are believed to be discovered through discovery.

Pet., ¶ 71. None of these benefits was or could have been conferred by Plaintiffs. Nor did any of these benefits come at Plaintiffs' expense. Each of these alleged benefits could only come from the Tyson Defendants.

That Plaintiffs conferred no benefit on Mr. Avery or Ms. Sanders is even more apparent when the Court considers these alleged benefits as potential restitution damages. "When someone has been unjustly enriched at the expense of another, the beneficiary can be compelled to make restitution to the one conferring that benefit." *Post Hill Homeowners Assn. v. Kennell*, 39 S.W.3d 508, 514–15 (Mo. App. W.D. 2000). Here it is completely nonsensical to think the individual Defendants would make restitution to Plaintiffs for their alleged "retirement benefits" and "employment promotion with the Tyson Companies[.]"

The bottom line is the tort of unjust enrichment has no application to the facts as pled. In Missouri, unjust enrichment is an action for quasi-contract. It protects a party that confers a benefit on another party—without a formal contract—and then receives nothing in return. The textbook example of an unjust enrichment action is a contractor that performs work on someone's house and then is never paid for that work. *See Archway Kitchen & Bath, Inc. v. Lands Dev. Corp.*, 838 S.W.2d 13, 13 (Mo. App. E.D. 1992). If the parties have no contract in place, the laborer can still sue under unjust enrichment or quasi-contract for the value of their work.

Here, Plaintiffs never plausibly allege they conferred some benefit on the individual Defendants that they retained without paying. That is fatal to their claims as detailed in Defendants' motions to dismiss, which is adopted here. Fed. R. Civ. P. 10(c). In *Am. C.L. Union/E. Missouri*

14

*Fund v. Miller*, 803 S.W.2d 592, 595 (Mo. banc. 1991), the Missouri Supreme Court reversed the trial court and granted summary judgment as to the plaintiff's unjust enrichment claim for exactly this reason, holding that an essential benefit of the claim is a benefit conferred upon defendant by the plaintiff. *Id.* at 595. Here, Plaintiffs conferred no benefit on Mr. Avery or Ms. Sanders, and certainly did not confer the alleged benefits of their continued employment, salary, or retirement benefits. Nor did the individual Defendants receive some benefit at the Plaintiffs' expense. Rather, the alleged benefit came entirely from a third party.

Plaintiffs try to avoid this law by arguing that Missouri does not require a benefit be conferred directly by the plaintiff to the defendant. For this proposition they cite to *Cromeans v. Morgan Keegan & Co.*, No. 2:12-CV-04269-NKL, 2013 WL 12129609, at *5 (W.D. Mo. Nov. 5, 2013). *See* Doc. 30, 12. The Court in *Cromeans* stated, "[f]or every decision stating that the plaintiff must have conferred a benefit upon the defendant, another decision frames the matter in terms of whether the defendant received a benefit at the expense of the plaintiff." *Cromeans*, 2013 WL 12129609, at *5. *Cromeans* and a line of cases following it stand for the proposition that the alleged benefit must have been conferred on the defendant either directly or indirectly, but at the plaintiff's expense. Neither can be present here under the facts as pled. Plaintiffs' allegations are that they continued to operate the Kesler family farms and Tyson continued to employ Mr. Avery and Ms. Sanders. The two have nothing to do with each other. Plaintiffs do not allege they personally conferred the benefit of continued employment on Mr. Avery and Ms. Sanders. And it is common sense that the Plaintiffs were unable to confer employment, salary, and retirement benefits on the individual Defendants at their own expense.

The simple fact is there is no claim for unjust enrichment. The individual Defendants are not currently retaining some benefit they received at the Plaintiffs' expense, for which Plaintiffs

would be entitled recoupment. And the Plaintiffs do not allege and never had a quasi-contract of any type with the individual Defendants.

### C.     Respondeat Superior is Not a Cause of Action.

Plaintiffs' Count VI is for "Respondeat Superior." Respondeat superior is not a cause of action in Missouri; it is a theory of vicarious liability, through which a company can be liable for the actions of its agents. *See Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 89 (Mo. App. E.D. 2012) (dismissing plaintiff's count for "respondeat superior" because "[r]espondeat superior is not a cause of action but rather a theory under which an employer is held responsible for the misconduct of a[n] employee where that employee is acting within the course and scope of his employment"). Plaintiffs' Count VI for respondeat superior, then, is not a plausible basis for liability.

### D.     Plaintiffs Civil Conspiracy Count Fails Because There is No Such Claim Among Employees and Their Employer.

In Missouri, it is legally impossible for an employer to conspire with its employees. *Creative Walking, Inc. v. Am. States Ins. Co.*, 25 S.W.3d 682, 688 (Mo. App. E.D. 2000). In *Creative Walking*, the court held that—because employees are agents of the employer—it would be "legally impossible for them to conspire" with their employer, and it affirmed the trial court's decision to dismiss the plaintiff's civil conspiracy claim. *Id.* at 688.

In Count VII of their Petition, Plaintiffs allege that the five Defendants—three Tyson entities and two individuals, Mark Avery and Kristi Sanders—"engaged with each other for the unlawful objective to fraudulently misrepresent and actively conceal the intentions to close the Dexter complex through misrepresentations to the Kesler family…" Pet., ¶ 94. Plaintiffs also allege that Mark Avery and Kristi Sanders, "at all times relevant herein [were] [] employee[s] and agent[s] of the Tyson Companies in a supervisory and/or management role …" Pet., ¶¶ 20-21.

16

These allegations, when combined, present a legal impossibility: Mr. Avery and Ms. Sanders could not possibly have entered into a civil conspiracy with the Tyson Defendants because they were allegedly employees and agents of "the Tyson Companies" at all relevant times. Therefore, Plaintiffs civil conspiracy claim does not plausibly allege a basis for liability.

The Court has diversity jurisdiction. Because there is no reasonable basis in fact and law to support the claims asserted against Mark Avery and Kristi Sanders, they were fraudulently joined and Plaintiffs' motion for remand must be denied.

## II.    The Packers and Stockyards Act Contains a Controlling Forum Selection Clause.

As a separate grounds for maintaining jurisdiction over this case, the PSA contains a forum selection provision, which requires this action to be brought in federal court. 7 U.S.C.A. § 197b; 28 U.S.C. § 1331. Notably, Plaintiffs do not contest that the PSA has a forum clause and that—if applicable—the clause would place this action in the Eastern District of Missouri.

The PSA contains the following forum clause:

(a) Location of forum

The forum for resolving any dispute among the parties to a poultry growing arrangement or swine production or marketing contract that arises out of the arrangement or contract shall be located in the Federal judicial district in which the principle part of the performance takes place under the arrangement or contract.

7 U.S.C.A. § 197b (emphasis added); see also *Jackson v. Swift Eckrich, Inc.*, 53 F.3d 1452, 1457–58 (8th Cir. 1995) ("[T]he PSA do[es] provide a forum for persons aggrieved by a PSA violation in connection with the purchase or sale of poultry, or relating to any poultry growing arrangement. That forum is the federal district court.").[5]

---

[5]    To fully brief the Court, there is a District Court in Louisiana that considered the PSA's forum selection clause in 2010 and held that it did not give a right to remove a case from state court that asserts state law claims and arises out of a poultry growing arrangement. *Volentine v. Raeford Farms of Louisiana, LLC*, No. CIV.A.09-CV-1865, 2010 WL 743557, at *3 (W.D. La. Feb. 24, 2010). Defendants disagree with *Volentine*'s holding for a number of reasons. Both parties in *Volentine* agreed the PSA forum clause required

Accordingly, to invoke federal question jurisdiction under the PSA forum provision, the dispute must be: (1) "among the parties to a poultry growing arrangement"; and (2) one that "arises out of the arrangement or contract[.]" 7 U.S.C.A. § 197b.

The term "poultry growing arrangement" is defined by statute as "any growout contract, marketing agreement, or other arrangement under which a poultry grower raises and cares for live poultry for delivery, in accord with another's instructions, for slaughter[.]" 7 U.S.C.A. § 182 (9).

Plaintiffs' own allegations admit that Gary Kesler and Defendants are parties to a "poultry growing arrangement." Specifically, the Plaintiffs allege that Gary Kesler entered into a contract with Tyson to raise and care for live poultry for delivery (broiler chickens)—the textbook poultry growing arrangement governed by the PSA. *See* Pet., ¶ 26 ("on December 4, 2018, Tyson Chicken, Inc. and Gary Kesler entered into their most recent Broiler Production Contract"); *See also* Doc. 38.

As further evidence that the parties are in a "poultry growing arrangement," Plaintiffs' factual allegations support the conclusion that Tyson is a "live poultry dealer" as that term is defined by the PSA. *See also United States v. Tyson's Poultry, Inc.*, 216 F. Supp. 53, 61 (W.D. Ark. 1963). The term "live poultry dealer" means "any person engaged in the business of obtaining live poultry by purchase or under a poultry growing arrangement for the purpose of either

---

removal if the parties' contract was a "poultry growing arrangement." *Id.* at *2. But the court ignored that and decided—sua sponte—that the statute did not have this effect. More importantly, six years after *Volentine*, the United States Supreme Court decided *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016). In *Manning*, the Supreme Court considered a statutory grant of jurisdiction contained in Section 27 of the Securities Exchange Act. Section 27 provided District Courts with jurisdiction over claims "brought to enforce any liability or duty created by this chapter[.]" 15 U.S.C § 78aa. The Supreme Court held that Section 27 confers federal jurisdiction over suits that arise under the Exchange Act, even if those suits contain only state law claims. *Id.* at 380, 384–85. The *Manning* holding, in conjunction with the plain language of 7 U.S.C.A. § 197b, establishes that this Court has jurisdiction if Plaintiffs allege a dispute arising out of the parties' poultry growing arrangement.

slaughtering it or selling it for slaughter by another[.]" 7 U.S.C.A. § 182 (10) (emphasis supplied). This is precisely what Plaintiffs allege that Tyson does.

Plaintiffs' case also "arises out of" the growing arrangement they have alleged between themselves and Tyson. Plaintiffs' Petition alleges that Defendants made misrepresentations to them that "[the growers'] short term agreements for continued operations would be continue (sic) for years to come" but that Tyson actually planned to close the Dexter Complex and terminate its contracts. Pet., ¶ 34. Plaintiffs claim they expended "large sums of money, labor and effort to stay in compliance with the demands of the Tyson Companies" so they could continue raising broiler chickens. *Id*. Plaintiffs allege a number of misrepresentations all emanating from the poultry growing arrangement, such as "issuing letters of intent to other growers in the Dexter Complex promising contracts for construction or improvements of broiler houses" and "demand[ing] of broiler farmers to retrofit their broiler houses and make extremely costly modifications in order to continue receiving chickens from the Tyson Companies." *Id*. at ¶ 40.

All of Plaintiffs' claims arise from the poultry growing arrangement they had with the Tyson entities. Plaintiffs' claims clearly set forth a "dispute among the parties to a poultry growing arrangement . . . that arises out of the arrangement" and, therefore, they must be raised in federal court. 7 U.S.C.A. § 197b.

Plaintiffs do not contest that this case belongs in the Eastern District of Missouri if the parties are within a "poultry growing arrangement." Instead, Plaintiffs seek to avoid this law by arguing the PSA does not apply because Plaintiffs are allegedly "employees" of Tyson, not independent contractors and, therefore, are excluded from the PSA. Doc. 30, 14. This is a new argument not included in Plaintiffs' Petition, which states the opposite.

19

Plaintiffs plead the "Tyson Companies would then move [] hatched chickens at a specified age to broiler farms (owned by individuals or entities that were wholly separate from the Tyson Companies) who were contracted with the Tyson Companies to grow those chickens[.]" Pet. ¶ 1. Plaintiffs plead that these contracts are "poultry growing arrangements," saying the "Tyson Companies enter into poultry growing arrangements, with thousands of growers that are predominantly small, family owned operations, which provide the Tyson Companies with broiler grow-out services[.]" *Id.* at ¶ 4. And Plaintiffs plead they executed precisely this type of contract with Tyson. *Id.* at ¶ 26. Mr. Kesler's contract with Tyson Chicken, Inc. confirms this relationship by having a section titled "**Independent Contractor**" which provides, "Producer is an independent contractor . . . Producer is not a partner, agent, or employee of, or joint venturer with, Company." Doc. 38, 8. Looking only to Plaintiffs' Petition, the parties are clearly engaged in an independent contractor relationship—not that of employee and employer.

Courts have heard and rejected Plaintiffs' argument since at least the 1970s. In *Bayside Enterprises, Inc. v. N.L.R.B.*, 429 U.S. 298, 302–03 (1977), the Supreme Court held that poultry growers working with a vertical integrator were not "employees" under the NLRA and upheld the independent contractor relationship. The Supreme Court affirmed that holding 20 years later in *Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392, 405 (1996), where it drew a line between live-haul crews (that were employees of the vertical integrators) and "independent growers." More recently, courts have addressed growers as independent contractors and applied the PSA to their relationship. *See*, *e.g.*, *In re Pilgrim's Pride Corp.*, No. 08-45664 DML, 2011 WL 1107118, at *2 (Bankr. N.D. Tex. Mar. 24, 2011) (addressing PSA claim and stating "the Growers in this case were businessmen who operated their own chicken farms, and who were independent contractors with Gold Kist and/or Pilgrim's Pride"); *Breaking Free, LLC v. JCG Foods of Alabama, LLC*, No.

4:18-CV-01659-ACA, 2019 WL 1513978, at *1 (N.D. Ala. Apr. 8, 2019) (addressing PSA claim and noting the "Defendants utilize poultry growing arrangements where poultry farmers or independent contractors known as growers care for poultry").

Notably, Plaintiffs do not cite a single case that has found independent contract growers are "employees" of their vertical integrator. Instead, Plaintiffs cite the Internal Revenue Code, federal regulations, and generalized Supreme Court precedent on the employee/contractor relationship. Doc. 30, 14-16. These citations are all beside the point. Plaintiffs allege they raise broiler chickens under a poultry growing arrangement with Tyson Chicken, Inc., a poultry dealer. That relationship is regulated by the Packers and Stockyards Act and has been for decades. Part of that regulation is a forum selection clause, which controls here.

### III.   Defendants Have Filed Their Required Disclosures.

Plaintiffs' final section of their motion to remand argues removal is inappropriate because Defendants' corporate disclosures were untimely. That is incorrect. Plaintiffs served the individual Defendants on August 22, 2023. Plaintiffs then served the Tyson Defendants on September 22, 2023. Under 28 U.S.C. § 1446(b), each Defendant had 30 days from the time of service to remove—setting the removal due date on September 22, 2023 for the individual Defendants and October 22, 2023 for the Tyson Defendants. Under the last defendant served rule, set out in 28 U.S.C. § 1446(b)(2)(B), the deadline to remove in this case was October 22, 2023. Defendants complied with this statute, removing the case on behalf of all Defendants on September 22, 2023. Filing the removal earlier does not change the timelines of all removal and disclosure filings in this case.

Rule 7.1(a)(2)(A) also requires that Defendants file corporate disclosures at the time of removal. Defendants complied with this requirement as well, filing their corporate disclosure statement on September 22, 2023, the same day as removal. *See* Doc. 5. After review, the Court

found the form of these disclosures deficient and ordered them supplemented, which it was well within its power to do. *See Bismarck Park Ave. Properties, L.L.P. v. Owners Ins. Co.*, No. 1:21-CV-165, 2023 WL 5587558, at *1 (D.N.D. Aug. 29, 2023) (ordering party to supplement corporate disclosures in diversity jurisdiction case). Defendants complied and supplemented on September 25, 2023 and September 28, 2023.

There is nothing in this procedural history that would affect removal. And Plaintiffs do not cite to any case law or statute suggesting otherwise. The Court should disregard this argument as irrelevant and incorrect as to the case's procedural history.

## **CONCLUSION**

For the above reasons, Defendants respectfully request this Court deny Plaintiffs' motion to remand and retain jurisdiction over the suit.


Dated:  October 20, 2023
Respectfully submitted,


SHOOK, HARDY & BACON L.L.P.


By: */s/ Mark S. Tatum*
    Mark Tatum, MO Bar #50082
    Steven Soden, MO Bar #41917
2555 Grand Blvd.
Kansas City, MO 64108-2613
Telephone: 816.474.6550
Fax: 816.421.5547
mtatum@shb.com
ssoden@shb.com

*Attorneys for Defendants*

22

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2023, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system which sent notification to all parties entitled to service.


                                     */s/ Mark Tatum*
                                      Attorney for Defendants